UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEPHANIA OSEI,

                                  Plaintiff,

          -against-

THE BROOKDALE HOSPITAL MEDICAL
CENTER, ADEBAYO ESAN,

                                  Defendants.

**MEMORANDUM & ORDER**
**25-CV-3893 (NGG) (JRC)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Stephania Osei brings this employment discrimination action against Defendants Adebayo Esan ("Dr. Esan") and The Brookdale Hospital Medical Center ("Brookdale") (collectively, the "Defendants") under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law (the "NYSHRL"), and the New York City Human Rights Law (the "NY-CHRL").[1] (Compl. (Dkt. 1) ¶ 1.) The Defendants now move to dismiss all Osei's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (Mem. of L. in Supp. of Mot. to Dismiss ("Mot.") (Dkt. 13-2) at 1.) Because Osei has alleged facts that plausibly support those claims, the court DENIES the Defendants' motion.

---

[1] *See* 42 U.S.C. § 2000e *et seq.* (Title VII); N.Y. Exec. Law § 290 *et seq.* (NYSHRL); N.Y.C. Admin. Code § 8-101 *et seq.* (NYCHRL).

[2] Should the court dismiss Osei's claims, she seeks "leave to replead" her claims to "address any . . . deficiency." (Mem. of L. in Opp'n to Mot. to Dismiss (Dkt. 13-3) at 17.) Because the court denies Brookdale's and Dr. Esan's motion to dismiss, it need not address Osei's request.

1

## I.  BACKGROUND[3]

Things started out well for Osei at Brookdale. As a nurse with 22 years of experience, she performed her duties for almost three years without incident in the hospital's Surgical Intensive Care Unit (the "SICU").[4] (Compl. ¶¶ 21, 64.) More than that, she excelled. Osei routinely received positive feedback from Brookdale's supervisory staff and doctors. (*Id.* ¶ 20.)

In May 2024, Osei emailed Odette Pompey—Brookdale's Director of Labor Relations—about the behavior of Dr. Esan, who is a Critical Care Physician in the SICU. (*Id.* ¶ 22.) She reported that Dr. Esan gave preferential treatment to SICU staff members who "shared his religious orientation, attended prayer meetings he conducted on [Brookdale] premises, [or] made contributions to the Covenant Nation Church, where he served as a Pastor." (*Id.* ¶ 23.) Osei alleged that this "preferential treatment" included "favorable work assignments and protection from employee discipline." (*Id.* ¶ 24.) Those like Osei who did not share Dr. Esan's faith, "were given less favorable work assignments," "subjected to false disciplinary reports," and suffered "unwarranted disciplinary actions." (*Id.* ¶ 25.) In Osei's email to Pompey, she also mentioned an argument between her and Nicolette Grant—another SICU nurse and a member of Dr. Esan's religious cohort. (*Id.* ¶ 32.) A separate nurse had witnessed the incident and described Grant as acting "insubordinately and unprofessionally" to

---

[3] At this stage, the court "accept[s] as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

[4] Osei came into her role through a placement agency called DirectShifts Medical P.C. (Compl. ¶ 16.) Once at Brookdale, however, the hospital "controlled the terms and conditions of Osei's employment, including being solely responsible for providing Osei her work assignments and providing her direct supervision and oversight." (*Id.* ¶ 17.)

2

Osei. (*Id.* ¶ 37.) After two weeks without a response from Pompey, Osei sent a follow-up email. (*Id.* ¶ 45.) Pompey then scheduled a meeting with Osei to discuss her concerns. (*Id.* ¶¶ 44-47.) At that meeting, Osei reiterated Dr. Esan's allegedly discriminatory conduct and expressed her fear of retaliation.[5] (*Id.* ¶ 48.)

Trouble followed. After Osei met with Pompey, a colleague told her that a SICU Director of Nursing—a member of Dr. Esan's church—was soliciting complaints against Osei. (*Id.* ¶ 50-51.) Within days, Brookdale placed Osei on unpaid leave "pending an investigation on SICU." (*Id.* ¶¶ 51, 56.) It informed her that the investigation pertained to an "episode of vomiting" involving one of her patients. (*Id.* ¶ 54.) According to Brookdale, Osei "had aggressively covered the [v]omiting [p]atient's mouth with a towel, thereby endangering him." (*Id.* ¶ 59.) Osei maintains that this claim was "false." (*Id.* ¶ 60.) Osei stresses that Dr. Esan was present for the incident in question and "did not advise [her] that he believed" she had done anything wrong. (*Id.* ¶ 58.) Nonetheless, Brookdale terminated her. (*Id.* ¶ 69.) She then timely filed this suit. (*See* Civil Cover Sheet (Dkt. 3) at ECF p.1.)

## II.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead facts sufficient to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That

---

[5] Osei was not alone in raising her concerns about Dr. Esan. "At least two other SICU nurses" reported his purported behavior to Brookdale's human resources department. (Compl. ¶¶ 26, 29.) They stated that he created an "environment of intimidation and fear," which "negatively impacted patient care within the SICU." (*Id.* ¶ 27.) One nurse even alleged that Dr. Esan would refer to staff members who refused to join his church as "the enemy." (*Id.* ¶ 30.) Like Osei, these other nurses stressed that Brookdale did nothing to address Dr. Esan's conduct. (*Id.* ¶ 31.)

3

"plausibility" standard is satisfied if a plaintiff "pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* However, the plaintiff is not required to provide "detailed factual allegations" to support her claims. *Id.* (quoting *Twombly*, 550 U.S. at 555). She may plead facts alleged "upon information and belief" if those facts "are peculiarly within the possession and control of the defendant," or if her belief "is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010);[6] *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharms.*, 847 F.3d 92, 96-97 (2d Cir. 2017) (stating the same). Additionally, the court must "accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)); *see Erickson*, 551 U.S. at 93-94.

## III. DISCUSSION

Osei brings three sets of claims. First, she alleges discrimination against Brookdale under Title VII, NYSHRL, and NYCHRL. (Compl. ¶¶ 82-84, 88-90, 100-102.) Second, she alleges retaliation against Brookdale under the same statutes. (*Id.* ¶¶ 85-87, 91-93, 103-105.) And third, she alleges aiding-and-abetting liability against Dr. Esan under NYSHRL and NYCHRL. (*Id.* ¶¶ 94-99, 106-108.) For reasons now explained, Osei has pled

---

[6] When quoting cases or the parties' filings, unless otherwise noted, all citations and internal quotation marks are omitted, and any addition of emphasis or alteration to the original in quoted text is adopted.

plausible allegations to support each of her claims. *See Twombly,* 550 U.S. at 570.

## A. Discrimination Claims

Osei asserts that Brookdale "discriminated against [her] on the basis of her religion." (Compl. ¶ 83; *see id.* ¶¶ 89, 101.) She frames the issue as one of "reverse religious discrimination." (Mem. of L. in Opp'n to Mot. to Dismiss ("Opp'n") (Dkt. 13-3) at 7-8 (quoting *EEOC v. United Health Programs of Am. Inc.,* 213 F. Supp. 3d 377, 392 (E.D.N.Y. 2016))); *see Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 378 (2d Cir. 2003) ("An employer discriminating against any non-[religious sect member] violates the anti-discrimination laws no less than an employer discriminating only against one discrete group."). Namely, Osei contends that Brookdale is liable because it ultimately terminated her for "not shar[ing] [Dr. Esan's] religious beliefs." (*Id.* at 7, 9 (quoting *United Health Programs of Am.,* 213 F. Supp. 3d at 392).) She provides ample support for that assertion.

### 1. Title VII Claim

Osei has adequately pled a Title VII discrimination claim. She has suitably alleged that Dr. Esan discriminated against her in a manner that can be attributed to Brookdale. The court now discusses why.

#### a. *Dr. Esan's Actions*

It is unlawful under Title VII "for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). At the motion to dismiss stage, a Title VII plaintiff "need not plead a prima facie case of discrimination." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 515 (2002). She only needs to allege that she is (1) "is a member of a protected class," (2) "was qualified" for her role, (3) "suffered an adverse employment action," and (4) "has at least

5

minimal support for the proposition that the employer was motivated by discriminatory intent."[7] *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). A plaintiff can satisfy the fourth element through "de minimis" circumstantial evidence, drawing inference from "more favorable treatment to employees not in the protected group" or from "the sequence of events leading to the plaintiff's discharge."[8] *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) (quoting *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)).

Osei has satisfied her burden to allege all four *Littlejohn* elements. 795 F.3d at 311. First, she "is a member of a protected class." *Id.* True, "[t]he only statement [she] makes as to her own religious beliefs is . . . 'non-membership in [Dr. Esan's] [c]hurch.'" (Mot. at 9 (quoting Compl. ¶ 77).) Title VII, however, protects employees not only from discrimination against their own religion, but also from discrimination for failing to share an

---

[7] Courts sometimes review Title VII claims at the pleading stage under an alternative formulation that the Second Circuit set forth in *Vega*, 801 F.3d at 86. *See Cocca-Rau v. Standard Ins. Co.*, No. 19-CV-6149 (PMH), 2020 WL 4207442, at *6 & nn.3-4 (S.D.N.Y. July 22, 2020) (compiling cases applying the *Littlejohn* and *Vega* standards). In *Vega*, the Second Circuit stated that "a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Id.* This court need not reconcile *Littlejohn* and *Vega*, however, because Osei has satisfied her "minimal" burden under either framework. *See Vega*, 801 F.3d at 85 (citing *Littlejohn*, 795 F.3d at 310). Still, the court employs the *Littlejohn* framework in an abundance of caution because that opinion was released one month before *Vega*. *See, e.g., Sousa v. Roque*, 578 F.3d 164, 173 & n.7 (2d Cir. 2009) (following the earlier of two published Second Circuit opinions to the extent that they conflicted because "the law of the [c]ircuit can be modified or overruled only by action of the *en banc* court").

[8] Although this statement comes from a summary judgment case, a Title VII plaintiff "cannot reasonably be required to allege more facts in the complaint than [she] would need to defeat a motion for summary judgment . . . ." *Littlejohn*, 795 F.3d at 311 (citing *Swierkiewicz*, 534 U.S. at 511-12).

employer's religion. *Mandell*, 316 F.3d at 378; (*see* Defs.' Reply Mem. of L. ("Reply") (Dkt. 13-4) at 1-2 (appearing to accept the validity of "reverse religious discrimination" claims). Thus, Osei has satisfied the first *Littlejohn* element. *See* 795 F.3d at 311.

Second, Osei has readily pled that she "was qualified" for her position as a SICU nurse. *Id.* A plaintiff may "satisfy this burden by showing that she possesses the basic skills necessary for performance of the job." *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016). "[T]he inference of minimal qualification is not difficult to draw" in cases like here "where discharge is at issue and the employer has already hired the employee." *Id.* (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001)). Osei was a practicing nurse for over twenty years when Brookdale hired her and was independently referred by DirectShifts, an agency specializing in placement of healthcare workers. (Opp'n at 9 (citing Compl. ¶¶ 14-15); *see* Compl. ¶ 16.) The Defendants do not contest as much in their own briefing. Thus, Osei has satisfied the second *Littlejohn* element. *See* 795 F.3d at 311.

Third, Osei has "pled that she was subject to the ultimate adverse employment action—termination."[9] (Opp'n at 9 (citing Compl. ¶ 69)); *see Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (stating that termination constitutes an adverse employment action). The Defendants' response is more distraction than rebuttal. (Mot. at 10-11.) They home in on Osei's dispute with Grant, observing that Osei "suffered no adverse consequences over the argument." (Mot. at 11; Reply at 7.) That may be. But Osei was still terminated. (Compl. ¶ 69.) Losing her job is an unequivocally adverse employment action that handily satisfies the third *Littlejohn* element. *See* 795 F.3d at 311; *Terry*, 336 F.3d at 138.

---

[9] Her suspension without pay similarly satisfies this requirement. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001).

Fourth, Osei satisfies the intent element because she plausibly demonstrates that Brookdale's decision to terminate her was "based on [her] failure to adopt or follow [Dr. Esan]'s religious beliefs." *United Health Programs of Am.*, 213 F. Supp. 3d at 392; *see Mandell*, 316 F.3d at 378. Osei plausibly alleges that that Dr. Esan gave "more favorable treatment" to SICU staff members that attended or otherwise supported his church. *Abdu-Brisson*, 239 F.3d at 468. As she explains, this treatment included "favorable work assignments and protection from employee discipline." (Opp'n at 10 (citing Compl. ¶¶ 23-24).) Other staff members, Osei contends, "were given less favorable work assignments and subjected to false disciplinary reports (including baseless and fabricated charges of inadequate patient care) and unwarranted disciplinary actions." (*Id.* (citing Compl. ¶ 25).)

The Defendants' response misunderstands what is required to defeat a Title VII motion to dismiss. They note that Osei "does not allege that she herself had ever received less favorable work assignments than employees allegedly associated with Dr. Esan's church." (*Id.* at 10; Reply at 3-4.) They then state that her allegations regarding Dr. Esan's treatment of others are "vague" and "conclusory." (Mot. at 11.) If the Defendants had their way, Osei would need to list "the names of the employees allegedly involved, the date of their complaint(s), the exact nature of their complaints, and what adverse employment action was taken

against the employees."[10] (*Id.* (Compl. ¶¶ 26-29).) The Defendants' articulation of the law is not supported by citation to caselaw, and the burden that Osei faces at this stage is "minimal." *See Littlejohn*, 795 F.3d at 311. Her detailed allegations of differential treatment meet the moment. *See Abdu-Brisson*, 239 F.3d at 468.

Osei also provides an independent ground to satisfy the fourth *Littlejohn* element. 795 F.3d at 311. As she explains, "the events leading up to her termination also support an inference of discrimination." (Opp'n at 10); *see Abdu-Brisson*, 239 F.3d at 468. Prior to her termination, Osei had a 22-year career and no prior history of inadequate patient care at Brookdale. (Opp'n at 10; *see* Compl. ¶¶ 14, 20-21.) A colleague then warned Osei that a SICU Director of Nursing—a member of Dr. Esan's church—was soliciting complaints against her. (*Id.* (citing Compl. ¶ 50).) She was suspended within a few days, and then Brookdale fired her. (*Id.*; *see* Compl. ¶¶ 51, 69.)

The Defendants' response to these allegations is equally unpersuasive. They characterize her "factual allegations . . . as nothing more than pure speculation," which lack support beyond a "series of conclusory statements that do no more than recite the elements of the cause of action." (Mot. at 9 (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F. 3d 72, 87 (2d Cir. 2015).)

---

[10] Their sole support for this exacting standard is an unpublished district court decision that concluded a plaintiff's allegation to be insufficient that his employer "creat[ed] [] worse terms and conditions of employment [for him] as compared to similarly s[i]tuated . . . employees" outside the protected groups at issue. (Mot. at 12 (citing *Royall v. City of Beacon*, No. 24-CV-0003 (KMK), 2024 WL 4266546, at *16 (S.D.N.Y. Sept. 23, 2024)).) There, the plaintiff made "extraordinarily vague allegations," and "provide[d] no specific information regarding his alleged comparators suggesting that they were in any way similarly situated as compared to [the] [p]laintiff. . ." *Royall*, 2024 WL 4266546, at *16. Quite different from Osei, who raised as comparators other SICU staff who were members of the church. (Compl. ¶¶ 23-27, 32-37 (discussing Nicolette Grant).)

9

When these allegations are stripped away, the Defendants argue that Osei "merely alleges that she was investigated over a report that she had improperly endangered a patient" and was terminated thereafter. (*Id.* at 12 (citing Compl. ¶ 51).) It is unclear how the Defendants reach that conclusion. Osei detailed "the sequence of events leading to [her] discharge," thereby raising a plausible inference that Dr. Esan acted against her with discriminatory intent.[11] *See Abdu-Brisson,* 239 F.3d at 468.

For these reasons, Osei has plausibly alleged under Title VII that Dr. Esan took discriminatory actions against her. *Littlejohn,* 795 F.3d at 311.

> b.   *Attributing Dr. Esan's Discriminatory Actions to Brookdale*

Osei appropriately attributes Dr. Esan's purported bias to Brookdale. "[E]ven absent evidence of illegitimate bias on the part of the ultimate decision maker," a plaintiff states a Title VII discrimination claim "so long as the individual shown to have the impermissible bias played a meaningful role in the decision-making process."[12] *Naumovski v. Norris,* 934 F.3d 200, 220 (2d Cir. 2019) (quoting *Holcomb v. Iona Coll.,* 521 F.3d 130, 143 (2d Cir. 2008)). That role can occur "at any stage" of the decision-making

---

[11] Defendants also discuss Osei's brief exposition of her argument with Grant. They note that Osei merely alleges that "[u]pon information and belief, no write-up or other disciplinary action was taken against Grant due to the intervention of Dr. Esan." (Mot. at 10-11 (citing Compl. ¶¶ 34-35, 40); *see* Reply at 4.) That disagreement, however, and her complaints about it to Pompey are not foundation of her claims. Instead, the lack of any discipline to a similarly situated employee merely serves as a comparator for Osei's claims. (*See* Compl. ¶¶ 44-48 (discussing Osei's suspension and termination as a basis for her claims).)

[12] Because Osei has satisfied this standard, the court pretermits analysis of her alternative cat's paw theory to impute Dr. Esan's alleged bias to Brookdale. (*See* Opp'n at 12 (citing *Staub v. Proctor Hospital,* 562 U.S. 411 (2011); *Vasquez v. Empress Ambulance Serv.,* 835 F.3d 267 (2d Cir. 2016)).)

process. *Bart v. Golub Corp.*, 96 F.4th 566, 577 n.4 (2d Cir. 2024).

Osei satisfies this standard. She alleges that she "was suspended based on a false allegation of inadequate patient care by Dr. Esan" and by a SICU Director of Nursing who was "a member of Dr. Esan's [c]hurch." (Opp'n at 10 (citing Compl. ¶¶ 58-64).) This plausibly demonstrates that Dr. Esan "played a meaningful role in the decision-making process" to terminate her. *Naumovski*, 934 F.3d at 220 (quoting *Holcomb*, 521 F.3d at 143). The Defendants' arguments to the contrary are unpersuasive. They stress that "Dr. Esan is neither [Osei's] employer nor her supervisor with authority over her terms of employment." (Mot. at 7.) The Defendants contend that Osei fails to allege that her direct supervisor "ha[s] any affiliation with" Dr. Esan's church. (*Id.*) Title VII, however, eschews such "nebulous . . . colloquial uses of the term supervisor." *Vance v. Ball State Univ.*, 570 U.S. 421, 431-32 (2013). It instead considers whether an employer has "empowered" the discriminating employee "to take tangible employment actions against the victim, *i.e.*, to effect a significant change in employment status." *Id.* at 431. This includes "a victim's terms or conditions of employment." *Id.* at 439. Because Osei alleges that Dr. Esan exercised control over the conditions of employment of nurses and other staff in the SICU, (*see* Compl. ¶¶ 22-31, 32-43), and that he "played a meaningful role" in her termination, she appropriately attributes his alleged discrimination to Brookdale. *Naumovski*, 934 F.3d at 220 (quoting *Holcomb*, 521 F.3d at 143).

*       *       *

In sum, Osei has adequately stated a claim for discrimination under Title VII. *See Littlejohn*, 795 F.3d at 311; *Naumovski*, 934 F.3d at 220.

11

### 2. NYSHRL and NYCHRL Claims

NYSHRL and NYCHRL similarly prohibit employers from discriminating against employees based on their religion. N.Y. Exec. L. § 296(1); N.Y.C. Admin. Code § 8-107(1)(a). "Claims brought under the NYSHRL 'are analyzed identically'" to Title VII claims. *Hyek v. Field Support Servs., Inc.*, 461 F. App'x 59, 60 (2d Cir. 2012) (summary order) (quoting *Smith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir. 1999), *overruled on other grounds by Meacham v. Knolls Atomic Power Lab.*, 461 F.3d 134, 140-41 (2d Cir. 2006).) Consequently, the outcome under the two is necessarily the same. *Smith*, 196 F.3d at 363 n.1. Because Osei has stated a claim under Title VII, she has also stated a claim under NYSHRL. *See id.*

Discrimination claims under the NYCHRL are analyzed separately from NYSHRL and Title VII and are broadly construed in favor of discrimination plaintiffs. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). Nonetheless, NYSHRL and Title VII serve "as a floor below which [NYCHRL claims] cannot fall." *Id.* (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)); *Hagan v. City of New York*, 39 F. Supp. 3d 481, 503 (S.D.N.Y. 2014) ("[T]he city law grants employees broader protections than its federal and state counterparts."). Thus, Osei has also necessarily stated a claim under NYCHRL. *See Mihalik*, 715 F.3d at 109; *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379 (S.D.N.Y. 2019) ("Because [the] [p]laintiff's claims survive the higher standard required under Title VII and NYSHRL, the [p]laintiff's claims also survive under the NYCHRL.").

### B. Retaliation Claims

Osei alleges that Brookdale fired her in retaliation for raising concerns about Dr. Esan's discriminatory actions. (Opp'n at 13.) Here too, Osei provides sufficient support to state a claim.

12

1. Title VII Claim

For a Title VII "retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) because [s]he has opposed any unlawful employment practice." *Vasquez v. Empress Ambulance Serv.*, 835 F.3d 267, 271 (2d Cir. 2016) (quoting *Vega*, 801 F.3d at 90). "An employee communicating their belief that an employer has engaged in . . . a form of employment discrimination . . . virtually always constitutes the employee's opposition" to the activity." *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009). This includes not only "complaints involving discrimination against the complainant herself" but also "complaints of discrimination on behalf of other employees" or about "discriminatory practices generally." *Littlejohn*, 795 F.3d at 317. A plaintiff need not allege "that her underlying complaint of discrimination had merit." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)). She only needs to demonstrate that she "was motivated by a good faith, reasonable belief that the underlying employment practice was unlawful." *Id.* (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)). Still, the plaintiff must show that her employer acted against her with "retaliatory purpose." *Vega*, 801 F.3d at 90. She does so by showing "a connection" between the adverse employment action and the fact that she "opposed . . . any unlawful employment practice." *Vega*, 801 F.3d at 90 (referring to that opposition as a "protected activity" under Title VII). She can demonstrate that "connection" through "[t]emporal proximity" between the two events so long as they "occur in quick succession." *Sirois v. Long Island R.R.*, 797 Fed. App'x 56, 60 (2d Cir. 2020) (summary order) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).

Osei has handily pled the first *Vasquez* element. *See* 835 F.3d at 271. The Defendants seem to misunderstand her argument in

13

contending otherwise. They assert that "[t]the sole substantive complaint [Osei] makes is that [she] believed that [] Grant should have been written up after [the pair] got into an argument." (Mot. at 15-16; *see* Reply at 6.) Because Osei was also not disciplined for the incident, the Defendants reason that she made "no allegation that [she] was treated in a less favorable manner than [her] co-worker." (Mot. at 16; *see* Reply at 6.) Nonsense. Osei plainly alleges that days after her meeting with Pompey, she was suspended without pay and eventually terminated. (Opp'n at 13 (citing Compl. ¶¶ 50-56).) As discussed, both suspension and termination constitute adverse employment actions under Title VII. *Terry*, 336 F.3d at 138; *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001). Osei has therefore shown that Brookdale "took an adverse employment action [] against her." *Vasquez*, 835 F.3d at 271 (quoting *Vega*, 801 F.3d at 90).

Osei has also adequately pled the second *Vasquez* element. The Defendants again feel differently, but to no avail. They focus on Osei's first email to Pompey, insisting that she did not oppose any unlawful employment practice. [13] (Mot. at 15.) They acknowledge that Osei's email states that Dr. Esan was treating SICU employees in his church more favorably than others. (*Id.* at 15-16) Bafflingly, however, they insist that she "fails to present a claim of religious discrimination," casting aside allegations of mistreatment as "vague" and "totally" devoid of "any specifics." (*Id.* at 15-16.)

Again, the Defendants fail to grasp what Title VII requires at the pleading stage. To start, Osei alleges that she acted to oppose an

---

[13] The Defendants do not discuss Osei's follow-up email or her ensuing meeting with Pompey. (*See* Compl. ¶¶ 44-48.) Both are also protected activities under Title VII. *See Vasquez*, 835 F.3d at 271 (quoting *Vega*, 801 F.3d at 90).

14

"unlawful employment practice." *Vasquez*, 835 F.3d at 271 (quoting *Vega*, 801 F.3d at 90). Namely, she reported "biased and discriminatory conduct in the SICU perpetrated by Dr. Esan based on a religious preference." (Opp'n at 13-14 (citing Compl. ¶¶ 22-25, 42-49).) Osei also pleads "a good faith, reasonable belief" that Dr. Esan discriminated against other nurses and staff in the workplace. *Kwan*, 737 F.3d at 843 (quoting *Reed*, 95 F.3d at 1178). She demonstrates that belief through references to her own experience in the SICU and those of at least two other nurses. (*See* Opp'n at 14, 16; Compl. ¶¶ 22-49.) Further, Osei pleads that Brookdale acted with "retaliatory purpose." *Vasquez*, 835 F.3d at 271 (quoting *Vega*, 801 F.3d at 90). She does so by "connect[ing]" her complaints about Dr. Esan to her suspension and ultimate termination. *Vega*, 801 F.3d at 90. Osei highlights that she was suspended less than two weeks after her conversation with Pompey. (Opp'n at 13.) Because these two events "occur[ed] in quick succession," they support a claim of retaliatory purpose. *Sirois*, 797 Fed. App'x at 60 (citing *Breeden*, 532 U.S. at 273-74); *Gehlaut v. Dep't of Educ.*, No. 24-1741, 2025 WL 2586770, at *2 (2d Cir. Sept. 8, 2025) (summary order) (explaining that "when a plaintiff relies on temporal proximity alone to establish causation," the time between two events must "usually" be "less than three or four months" (citing *Breeden*, 532 U.S. at 273)); (*see* Opp'n at 14-15).

In sum, Osei has stated a claim for retaliation under Title VII. *See Vasquez*, 835 F.3d at 271 (quoting *Vega*, 801 F.3d at 90).

### 2. NYSHRL and NYCHRL Claims

The NYSHRL and NYCHRL "employ a more liberal standard" than Title VII for retaliation claims.[14] *Edelman v. NYU Langone*

---

[14] Osei states that NYSHRL utilizes the same standard as Title VII. (Opp'n at 13.) Not anymore. NYSHRL "was amended in 2019 to align with the NYCHRL's more liberal pleading standard." *Edelman*, 141 F.4th at 45 n.9 (quoting *Qorrolli*, 124 F.4th at 122-23).

15

*Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025) (quoting *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024)). Under those statutes, a plaintiff only "must demonstrate that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Id.* The NYSHRL and NYCHRL "are at least as protective as Title VII, so a plaintiff who states a claim of retaliation under Title VII necessarily states retaliation claims under the state and city laws as well." *Emanuel v. City of New York*, No. 23-CV-2980 (JMF), 2024 WL 3638328, at *5 (S.D.N.Y. Aug. 2, 2024) (citing *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017) (per curiam)); *see Edelman*, 141 F.4th at 45-49 (declining to analyze a plaintiff's NYCHRL and NYSHRL retaliation claims separately because she stated a claim under Title VII).

As discussed, Osei has stated a claim for retaliation under Title VII. Consequently, she has stated claims for retaliation under NYCHRL and NYSHRL as well. *See Edelman*, 141 F.4th at 45-49; *McLeod*, 864 F.3d at 157.

### C. Aiding-and-Abetting Claims

Lastly, Osei brings claims against Dr. Esan under NYSHRL and NYCHRL, alleging that he unlawfully "aided and abetted" in Brookdale's discriminatory and retaliatory "decision to terminate [her] employment." (Opp'n at 16.) The court agrees.

NYSHRL makes it an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce" an employer to discriminate or unlawfully retaliate, "or attempt to do so." N.Y. Exec. Law § 296(6). NYCHRL has "virtually identical" language. *Williams v. New York Housing Auth.*, 61 F.4th 55, 76-77 (2d Cir. 2023) (quoting *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)); *see* N.Y.C. Admin. Code § 8-107(6) (prohibiting the same conduct under city law). Thus, "[t]he same standards" of analysis apply to both statutes. *Williams*, 61 F.4th at 76-77 (quoting

*Feingold*, 366 F.3d at 158). Under those standards, a co-worker who "actually participates in the conduct giving rise to a discrimination claim" is liable even if "that co-worker lacked the authority to either hire or fire the plaintiff." *Feingold*, 366 F.3d at 158. Nonetheless, the employer's liability "must be established as a predicate to individual liability for aiding and abetting." *De Figueroa v. New York*, 403 F. Supp. 3d 133, 163 (E.D.N.Y. 2019) (citing *Jain v. McGraw-Hill Cos.*, 827 F. Supp. 2d 272, 277 (S.D.N.Y. 2011)).

Osei has handily alleged Dr. Esan fits that bill. As discussed, she has sufficiently alleged predicate violations by Brookdale for discrimination and retaliation. *See id.* She also contends that Dr. Esan had direct involvement in supplying Brookdale with allegedly false claims that she endangered a patient, along with its decision to terminate her employment. (Opp'n at 16 (citing Compl. ¶¶ 50-51, 57-60)); *see Malena*, 886 F. Supp. 2d at 366 ("By supplying the intent and the complaints that may have led to [the] [p]laintiff's termination, [the defendant] may have actually participate[d] in the conduct giving rise to the plaintiff's . . . claims."). This is true even where the employee lacks hiring and firing power. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Further, she has alleged that other SICU nurses reported Dr. Esan for differential treatment based on religious affiliation, and that Brookdale retaliated against them for doing so. (*Id.* (citing Compl. ¶¶ 26-29).)

Again, the Defendants' response misapprehends the relevant legal standard. They hang their hats on contending that Osei

17

improperly made her allegations against Dr. Esan "[u]pon information and belief."[15] (Mot. at 18; Reply at 8; *see* Compl. ¶¶ 27, 52, 57, 59, 62-64, 65, 68, 69 n.2.) But as the court explained, a plaintiff can plead "facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible."[16] *Arista Records*, 604 F.3d at 120; *Physicians Healthsource*, 847 F.3d at 96-97. Here, essential facts that might support Osei's allegations likely sit within Brookdale's employee files concerning the complaints levied against her and how it conducted its ensuing investigation. (*See* Compl. ¶¶ 52, 57, 59, 62-65, 68.) Others similarly relate to files concerning complaints from other SICU nurses. (*See id.* ¶ 27.) These are "peculiarly within the possession and control of" Brookdale. *Arista Records*, 604 F.3d at 120; *Physicians Healthsource*, 847 F.3d at 96-97.

Further, the court has already discussed ample information that Osei alleged to "make[] the inference of" Dr. Esan's "culpability plausible." *See id.* The Defendants wrongly surmise otherwise.

---

[15] Again, the Defendants also focus on Osei's discussion of her disagreement with Grant. (Mot. at 18 (citing Compl. ¶¶ 40-41).) But as the court already explained, Osei does not base her claims on that disagreement or her complaints about it to Pompey. (*See* Compl. ¶¶ 44-48 (discussing Osei's suspension and termination as a basis for her claims).)

[16] The Defendants resist this standard by focusing on one case that Osei cites in her opposition, *Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, 23 F. Supp. 3d 344 (S.D.N.Y. 2014). They insist that it is "totally different" because it was a copyright case in which the plaintiff's use of the phrase "upon information and belief . . . did not detract from the detailed allegations" and "specific examples" in the complaint." (Reply at 8.) The Defendants, however, neglect to mention that *Lefkowitz* merely cites to a more general standard announced in *Arista Records*, which was later reaffirmed in *Physicians Healthsource*. *See Lefkowitz*, 23 F. Supp. 3d at 356 (citing *Arista Records*, 604 F.3d at 120); *Physicians Healthsource*, 847 F.3d at 96-97. Thus, even putting aside the level of detail in Osei's complaint, the Defendants' attempt to make a strawman out of *Lefkowitz* fails.

They contend that Osei failed to state that she suffered "derogatory remarks based upon her not belonging to Dr. Esan's church" or that she was "given worse work assignments than a similarly situated colleague who did attend the church." (Reply at 8.) Osei, however, alleged that Dr. Esan referred to SICU nurses who were not members of his church as "the enemy," which is patently derogatory. (Compl. ¶ 30.) And more fundamentally, Osei has alleged several facts that demonstrate Dr. Esan's influence over both general SICU management and Osei's termination more specifically. (*See* Compl. ¶¶ 24-25, 26, 29, 50, 58.) Thus, the court accepts her allegations made "upon information and belief." *See Arista Records*, 604 F.3d at 120; *Physicians Healthsource*, 847 F.3d at 96-97. Consequently, Osei has adequately alleged that Dr. Esan "participate[d] in the conduct giving rise to a discrimination claim" to support her aiding-and-abetting claims against him. *Feingold*, 366 F.3d at 157-58.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES the Defendants' Motion to Dismiss. The parties are DIRECTED to commence discovery proceedings before Magistrate Judge James R. Cho.

SO ORDERED.

Dated:    Brooklyn, New York
          April 27, 2026

                                    s/Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge

19